GEORGE D. WESTFALL v. THE BOARD OF WATER COMMISSIONERS OF THE CITY OF DETROIT.

*Negligence—Defective streets—Practice in Supreme Court—Costs.*

1. Where the record contains no index, no costs will be allowed for its printing.[1]
2. The defendant is held not guilty of negligence in so filling in the trench in which water pipe had been laid in a public street, outside of the portion required to be kept reasonably safe for travel, as to leave over the trench a ridge of earth from eight to twelve inches high, and thirty inches wide at the base, to admit of settling.

Error to Wayne. (Brevoort, J.) Submitted on briefs June 24, 1892. Decided October 4, 1892.

Negligence case. Defendant brings error. Reversed, and new trial granted. The facts are stated in the opinion.

*F. A. Baker,* for appellant.

*Dickinson, Thurber & Stevenson,* for plaintiff.

———

[1] No index was printed in either the record or brief, as required by Supreme Court Rule No. 61.

McGRATH, J.   In July, 1883, the defendant laid 200 feet of water pipe in Michigan avenue, just outside of the city limits, from a point east of the Lake Shore Railway crossing to a point 15 or 20 feet west of the Grand Trunk Railway crossing.   The pipe was laid in a trench about 5 feet deep, 18 inches wide at the bottom, and 30 inches wide at the top.   In filling in after laying the pipe, the earth was raised up over the excavation to the height of from 8 to 12 inches, so as to admit of settling.   Michigan avenue at this point was a plank road, and the water pipe was laid at least ten feet, some of the witnesses say 23 feet, north of the north end of the plank.   The planks were 8 or 9 feet long.

On October 20, 1883, plaintiff and wife, with a double team and a two-seated light wagon, were driving west on Michigan avenue.   Trains were moving on one of the two roads, and plaintiff had halted some distance east of the Lake Shore tracks.   After the gates were opened, plaintiff started up his team to cross the tracks, and, as plaintiff says:

"As the horses struck pretty near onto the railroad tracks, something started them.   I could not tell you what it was, or anything about it, and they only made a jump or two, and I was thrown out, and that is as far as I could go.   I cannot go any further.   *   *   *   The next I recollect I lay on the road about 15 or 20 rods away."

Referring to his wait for the crossing of the trains, he is asked:

"Q. You were there four or five minutes, and saw the mound of earth at that time?

"A. I did not; no, sir.

"Q. The mound of earth was right across the tracks, was it not, there, as you stood there?

"A. No, sir; it was ahead of me.

"Q. You did not get as far as that?

"A. We did not get that until we came to it.

"Q. I thought they began at the side, and extended along through there, but now you say they did not?

"*A*. They did, but still that mound was between the railroad tracks.

"*Q*. They had filled up and leveled down the other?

"*A*. Yes, sir.

"*Q*. So that this was simply between the tracks?

"*A*. Yes, sir.

"*Q*. All you know about it, your horses were frightened, but still you do not know at what?

"*A*. No, sir.   *   *   *

"*Q*. And then they opened the gates, and you started along, and that is all you know about it before you were thrown out?

"*A*. Yes, sir.

"*Q*. They only made one or two jumps before you were thrown out?

"*A*. Yes, sir."

Plaintiff's wife says:

"We started for home, and we crossed the Bay City track, and then we saw that the gates were shut, and we stopped back a decent distance, and when the gates were opened again we started on, and just got nicely started when something frightened the team, and they started, and that frightened me, so that, of course, I did not really know what did happen, only my husband was out of the buggy, and then I was in a dry ditch, over all the tracks.

"*Q*. Over what?

"*A*. That was over all the railway tracks before I went out.

"*Q*. When you say 'over' you mean 'beyond?'

"*A*. I mean beyond.

"*Q*. Now, have you any distinct recollection so that you can tell us how the accident happened,—as to what the buggy ran onto, if anything?

"*A*. I think that when the buggy crossed there the wheels touched the mound, which gave the buggy a sudden jar, and Mr. Westfall, in going over that, he was unseated, and just went outside, when he sat down again. *   *   *  I was not thrown out until we were off the tracks. My husband was jolted up, and as he came down he was jolted over the edge on the outside of the buggy."

No one saw either thrown out, and there is no other testimony tending to show what caused the jolt, except that one witness says that the next morning he saw buggy tracks

on the ridge; but this was at the east rail of the Grand
Trunk Railway tracks, and must have been from 100 to 125
feet from where plaintiff started to cross the tracks, and
these buggy tracks were as likely to have been made after
plaintiff was thrown out as before. The testimony of both
plaintiff and his wife was that just as they started, before
they had reached the railroad tracks or the ridge, the
team was frightened, made one or two jumps, and plaint-
iff was thrown out.

One witness says that the ridge was 10 or 12 feet
north of the north end of the plank; that it may have
been more or less. Two other witnesses say that the dis-
tance was 23 feet from actual measurement. Others say
that the planks between the tracks were 16 feet long, so
as to cover the entire traveled part of the way, and that
the pipes were laid north of these planks. There is abso-
lutely no testimony that the pipes were laid in the usually
traveled way, or within the space intended for travel.
Indeed, the testimony is clear that for some distance in
this vicinity the way was planked over with 16-foot planks,
and that these planks covered the entire portion of the
highway intended for travel. The statute provides that
every plank road—

"Shall be so constructed as to have at least sixteen feet
width of good, smooth, and permanent road, eight feet of
which, at least, shall be made of plank." How. Stat.
§ 3581, 3623.

Here we have, at least, 18 feet of roadway, and from
that to 31 or 32 feet of clear space.

The court instructed the jury that if they found that
the ridge of earth so left, as claimed by plaintiff, was so
close to the traveled highway as to render travel thereon
dangerous, and that the leaving of such ridge was the
direct and primary cause of the plaintiff's injury, then
they should hold the defendant liable. This is not the

law as applied to the facts given. Unpaved traveled ways are usually lined by ditches. A stick of timber is frequently placed at the end of a culvert to keep travelers within the traveled way. A ridge near the traveled way can be no more dangerous than a ditch, or a barrier of the same height. It is defects and obstructions within that portion of the highway intended for travel that the law aims to protect the public against. There are necessary uses to which highways are devoted other than travel. Water, gas, and other pipes are usually laid within the highway, and between the curbs and ditches. It becomes necessary to occupy streets at times with building materials. Such uses and occupations are not necessarily negligent, nor do they become so because runaways are unsafe under such circumstances, nor because frightened horses shy and cause a collision. It is a matter of common knowledge that, in laying pipes in unpaved streets and highways, the filling is done just as it was done in this instance. The earth is rarely tramped down, except where the street is paved, or the excavation crosses the street. To require it in every instance would add largely to the expense.

Streets should be kept reasonably safe for ordinary uses, not absolutely safe against extraordinary contingencies. Some consideration must be had for the other necessary uses to which highways are devoted. In the present case, the pipes had been laid not in the traveled way, but along the edge of the ditch. It was at a point near and between railroad crossings, where teams were not expected to congregate, and where the way devoted to travel was 16 feet in width. The space left for travel was at least 18 feet, or 2 feet more than that prescribed by statute. The pipes were laid in the manner in which such pipes are usually laid in such places. Under such circumstances, the defendant cannot be said to have been guilty of negligence, and the court should have given defendant's second request.

The judgment is therefore reversed, with costs of both courts to defendant, and no new trial granted.

The record submitted contains no index. In such case, no costs will be allowed for printing record.

The other Justices concurred.